1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Ronald Newsome,                          No. CV-21-00985-PHX-JJT

10                    Plaintiff,               **ORDER**

11   v.

12   Dignity-Kindred    Rehabilitation    Hospital
     East Valley LLC, *et al.*,

13

14                    Defendants.

15          At issue is Defendant Dignity-Kindred Rehabilitation Hospital East Valley LLC's

16   Motion for Summary Judgment (Doc. 39, MSJ), to which *pro se* Plaintiff Ronald Newsome

17   filed a Response (Doc. 42, Resp.) and Defendant filed a Reply (Doc. 43, Reply). No party

18   requested oral argument, and the Court will resolve the Motion without oral argument.

19   LRCiv 7.2(f). In this Order, the Court will also address Plaintiff's Motion for Continuance

20   (Doc. 37) and Motion to Request Discovery (Doc. 38).

21   **I.     BACKGROUND**

22          In the Complaint (Doc. 1-3, Compl.), Plaintiff brings a single claim under the

23   Arizona Adult Protective Services Act ("APSA"), A.R.S. § 46-451(A), on behalf of the

24   Estate of Delia Williamson. Ms. Williamson, a 73-year-old woman, was admitted for

25   health care by Defendant on February 9, 2019, and medical examinations revealed stroke

26   symptoms, atrial fibrillation, hypertension, obesity, edema in the lower extremities,

27   incontinence, and excoriation around the labial folds and left sacrum causing bleeding,

28   among other conditions. She was experiencing pain, for which she was prescribed

Oxycodone, and had limited mobility and an elevated blood pressure. An infectious disease doctor was consulted and noted possible hematuria and a urinary tract infection. By February 11 and 12, she appeared lethargic. On the evening of February 13, one of Defendant's doctors, Dr. Akinbiyi, prescribed 25 mg of Quetiapine (Seroquel)—a psychotropic medication—at bedtime, for which Ms. Williamson was unable to provide consent. The next day, a note was added to Ms. Williamson's chart that the doctor ordered Seroquel "after he was brought [in to] witness [patient's] behavior." (Compl. ¶ 53.) Plaintiff claims Ms. Williamson had an allergic reaction to the Seroquel. Plaintiff alleges upon information and belief that "Ms. Williamson was screaming in pain, her blood pressure was uncontrollable, and her face and tongue began to swell." (Compl. ¶ 56.) Plaintiff also states that "[o]n the morning of February 14, 2019, the night shift nurse documented that Ms. Williamson had been agitated." (Compl. ¶ 60.)

Over the next few days, medical staff encouraged Ms. Williamson's family to sign a consent form for the administration of Seroquel, but they declined to do so. Notes from the night shift from February 14 to 15 stated Ms. Williamson's pupils were constricted and she was lethargic. On February 15, Dr. Akinbiyi ordered the Seroquel discontinued. Over the next two weeks, Ms. Williamson's blood pressure continued to be elevated, among other symptoms. Defendant discharged Ms. Williamson on February 28, 2019, and she died on July 9, 2019.

As a basis for the APSA claim, Plaintiff alleges Defendant administered medication to Ms. Williamson without informed consent, as well as failed to adequately reposition Ms. Williamson to address her ulcers, timely respond to changes in her condition, report abnormal vital signs, properly document treatment, report and/or treat elevated blood pressure, and monitor her. Plaintiff also alleges Defendant failed to properly train its staff, implement appropriate policies, provide adequate staffing, and allocate an adequate budget for patient care. As a result, Plaintiff claims "Ms. Williamson experienced development and worsening of pressure ulcers, decreased mental and physical state, improper administration of a drug, and an allergic reaction," which caused her pain, suffering, and a

decline in mental and physical condition and overall health. (Compl. ¶ 98.) Plaintiff, who is Ms. Williamson's son, seeks economic damages on behalf of her Estate.

Defendant removed this case from state court on June 4, 2021 (Doc. 1), and the Court entered a Scheduling Order on August 12, 2021 (Doc. 18) and granted the parties' stipulation to extend some deadlines on February 3, 2022 (Doc. 23). After service of discovery but before depositions were taken, Plaintiff's counsel moved to withdraw under Arizona Ethical Rule 1.16 on March 14, 2022 (Doc. 25). Magistrate Judge Camille D. Bibles held a hearing on April 6, 2022 (Doc. 32) and thereafter granted counsel's motion to withdraw (Doc. 33). The Court then entered an Order giving Plaintiff over two months to either seek new counsel or notify the Court he intended to proceed *pro se*, advising Plaintiff that "if he elects to proceed as a *pro se* party, he will be held to comply with all court orders in this matter, as well as the Federal Rules of Civil Procedure, the Local Rules of Practice for the District Court of Arizona, the Federal Rules of Evidence, and any other applicable rules." (Doc. 35.) Plaintiff elected to proceed *pro se*. (Doc. 36.)

In its Motion for Summary Judgment, Defendant notes that, after Plaintiff decided to proceed *pro se*, Defendant "requested that Plaintiff provide dates for the deposition of Ms. Beerman"—Plaintiff's disclosed nursing standard of care expert—and "reminded Plaintiff of his obligation to disclose a causation expert in this case." (MSJ at 3.) Defendant reports that Plaintiff did neither.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the

nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id*. at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

## III.   ANALYSIS

### A.   Plaintiff's Motions for Continuance and to Request Discovery

On May 23, 2022, Plaintiff filed a Motion for Continuance (Doc. 37), stating that he was seeking "time to request and review from the Defendant[']s Attorneys all documents, reports, and any information related to this case," without specifying which of

the deadlines in the Scheduling Order (if any) he was requesting to move or how much time he was seeking. Upon granting the parties' prior Stipulation to extend some Scheduling Order deadlines, the Court set a fact discovery deadline of July 28, 2022, and a deadline for all discovery, including expert discovery, of November 17, 2022. (Doc. 23.) Thus, the discovery period was still open for several more months after Plaintiff filed the Motion for Continuance. As Plaintiff did not specify what extension he was seeking or provide good cause for an extension, and since discovery was still open when he filed the Motion, the Court will deny the Motion for Continuance (Doc. 37).

On June 9, 2022, Plaintiff filed a "Motion Requesting Ordering Discovery from Defendant, Rule 26 Ordering Discovery, Rule 121, 122 Regarding Discovery." (Doc. 38.) In the Motion, Plaintiff requested the disclosure of documents by Defendants. Under the Federal Rules of Civil Procedure and the Court's Scheduling Order (Doc. 18), discovery is conducted between the parties without the involvement of the Court, and only when a dispute arises as to, for example, a party's failure to disclose requested information may the parties involve the Court. This Court resolves discovery disputes by way of the procedure set forth in the Court's Scheduling Order. (Doc. 18 at 3.)

Here, Plaintiff did not identify any discovery dispute, and he was required to follow the procedures set forth in the Federal Rules of Civil Procedure and the Court's Scheduling Order (Doc. 18) to conduct discovery with Defendant. The Court notes that, before withdrawing, Plaintiff's counsel served discovery on Defendant. (*E.g.* Docs. 19, 24.) The Court reiterates that it advised Plaintiff when he elected to proceed *pro se* in this matter that he was obligated to follow the Federal Rules of Civil Procedure, the Court's Orders, and all other applicable rules. (Doc. 35.) For these reasons, the Court will deny the "Motion Requesting Ordering Discovery" (Doc. 38).

### B.    Defendant's Motion for Summary Judgment

In the Motion for Summary Judgment (Doc. 39), Defendant argues that Plaintiff has no admissible expert evidence and therefore cannot prove his case. According to the Complaint, Plaintiff's claim under APSA is that, in its care and treatment of

Ms. Williamson, Defendant breached the applicable standards of medical care, causing her injury. (Compl. ¶¶ 95–97.) This claim is one for "abuse" by a medical care provider under A.R.S. § 46-451(A)(1)(b), that is, "[i]njury caused by negligent acts or omissions." The Arizona Supreme Court has explained that, "by its terms, APSA identifies four requirements for an actionable abuse claim: (1) a vulnerable adult, (2) has suffered an injury, (3) caused by abuse, (4) from a caregiver." *Delgado v. Manor Care of Tucson, LLC*, 395 P.3d 698, 702 (Ariz. 2017) (citing A.R.S. §§ 46-451 (A)(1)(b), -455(B)).

Plaintiff's theories of abuse are principally that Defendant provided inadequate medical care to Ms. Williamson and administered the drug Seroquel without Ms. Williamson's informed consent, both of which are theories of negligence under Arizona law. *See id.* at 703–04 (analyzing a claim that the defendant provided inadequate medical care under APSA as a negligence claim); *Duncan v. Scottsdale Med. Imaging, Ltd.*, 70 P.3d 435, 439 (Ariz. 2003) (stating that a negligence claim for lack of informed consent "concerns the duty of the physician to inform his patient of risks inherent in the surgery or treatment to which he has consented," whereas a battery claim for unauthorized medical treatment "should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented" (internal quotations omitted)). Negligence claims in this context require a plaintiff to prove: "(1) a duty requiring the defendant to conform to a certain standard of medical care; (2) a breach by the defendant of that standard; (3) a causal connection between defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). "The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Robertson v. Sixpence Inns of Am.*, 789 P.2d 1040, 1047 (Ariz. 1990) (citations omitted).

Expert testimony is generally required for a plaintiff to prove the second and third elements of a negligence claim in this context, that is, to establish the applicable standard of medical care that the plaintiff claims the defendant breached and to demonstrate that the

defendant's breach proximately caused the plaintiff's injury. *Benkendorf v. Advanced Cardiac Specialists*, 269 P.3d 704, 706 (Ariz. Ct. App. 2012) (examining adequacy of expert testimony to show standard of care and proximate cause in medical malpractice action). This is so because expert testimony is required whenever proof of an element of a claim, such as causation, calls for information that is outside an ordinary person's common knowledge. *See Claar v. Burlington N. R.R.*, 29 F.3d 499, 504 (9th Cir. 1994) (holding that a plaintiff must proffer admissible expert testimony when special expertise is necessary for a fact-finder to draw a causal inference); *Salica v. Tucson Heart Hosp. – Cardondelet, L.L.C.*, 231 P.3d 946, 951 (Ariz. Ct. App. 2010) (explaining that expert medical testimony is required to establish proximate cause in a medical negligence case "unless a causal relationship is readily apparent to the trier of fact"). Indeed, the case that gave birth to the current standard for a court's evaluation of the reliability of expert testimony, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, involved a question of causation requiring special expertise, namely, whether a drug could cause limb defects. 43 F.3d 1311, 1313 (9th Cir. 1995).

Here, it is beyond dispute that determining what the appropriate medical treatment for Ms. Williamson's bleeding ulcers, possible hematuria, and urinary tract infection in combination with her stroke symptoms, atrial fibrillation, hypertension, obesity, edema in the lower extremities, and incontinence requires special expertise outside an ordinary person's knowledge. Likewise, it is beyond dispute that determining under what circumstances a doctor should prescribe Seroquel to a patient who is incapable of consenting, and determining whether administering a few doses of Seroquel over a few days caused Ms. Williamson any injury, requires special expertise. As a result, to prove the APSA claim for "injury caused by negligent acts or omissions," Plaintiff must proffer admissible testimony from a qualified expert or experts.

In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff proffers his own affidavit. (Doc. 42-1 at 1–7.) Aside from the fact that Plaintiff was not disclosed as an expert and did not produce the required expert report under the Federal

Rules of Civil Procedure, his affidavit is not sufficient evidence to demonstrate the standard of care or proximate cause because Plaintiff is not an expert in the relevant areas of medicine. Plaintiff also proffers the investigation report of the Arizona Department of Health Services (ADHS) resulting from a complaint he lodged, among other ADHS records, in which ADHS stated it "was not able to find enough evidence to verify [Plaintiff's] allegations" (Doc. 42-1 at 26). The Court has examined this evidence, and it does not contain the expert testimony required to establish the applicable standard of medical care or prove causation in Ms. Williamson's case.

At the beginning of the lawsuit, counsel for Plaintiff disclosed a medical expert's Affidavit pursuant to A.R.S. § 12-2603, which Defendant attached to its Motion for Summary Judgment. (Doc. 40-1 at 15–18, Beerman Aff.) In the Affidavit, Jenny Beerman, R.N., M.N., attests to an applicable standard of care and possible causation. Defendant argues that the Affidavit is insufficient for Plaintiff to prove his case for two reasons: (1) Plaintiff did not disclose an expert report as required by Fed. R. Civ. P. 26(a)(2), and (2) Ms. Beerman is not qualified to testify as a causation expert.

With regard to expert disclosure, Plaintiff points to no expert report prepared by Ms. Beerman and disclosed to Defendant. Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the witness's testimony is sufficiently reliable and will help the trier of fact. If a party retains an expert witness to provide testimony in a case, Federal Rule of Civil Procedure 26(a)(2)(B) requires the party to disclose an expert report that

> must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

The only statement by Ms. Beerman in the record is the Affidavit, and in it, she states that her opinions "are preliminary only" and will be supplemented as facts are given to her. Even if the Court construed the Affidavit as Ms. Beerman's Rule 25(a)(2)(B) report, it is deficient in multiple respects. While the Affidavit provides a preliminary summary of opinions, it does not contain the basis or reasons for Ms. Beerman's opinions by setting forth reliable medical sources, citing facts from the record, and applying the facts to the applicable medical standards. The Affidavit also does not identify any exhibits to be used, other cases in which Ms. Beerman has testified, or the compensation Ms. Beerman was paid to study the case and testify. The Court must thus conclude that Plaintiff failed to meet the disclosure requirements of Rule 25(a)(2)(B).

Federal Rule of Civil Procedure 37(c)(1) provides that a party who fails to provide the information required by Rule 26(a) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Court cannot conclude Plaintiff's failure to disclose was justified. As stated above, the Court warned Plaintiff of his obligation to comply with the Federal Rules of Civil Procedure and all applicable rules and Orders when Plaintiff decided to proceed *pro se*, and Plaintiff did not seek relief from the Court with regard to his disclosure of expert reports to Defendant. Plaintiff's failure to disclose was also not harmless, because without an expert report, Defendant could not prepare its defense. *See, e.g.*, *Pineda v. County of San Francisco*, 280 F.R.D. 517, 523 (N.D. Cal. 2012) (merely stating that the treating physician "will present fact and opinion testimony on causation, diagnosis, prognosis, [and] extent of [injury]" based on medical records was inadequate disclosure); *see also Cooke v. Town of Colorado City*, No. CV 10-08105-PCT-JAT, 2013 WL 551508 (D. Ariz. Feb. 13, 2013) (concluding a disclosure that "the witness will have opinions" in certain areas was inadequate when it "failed to state what the opinions are, and the factual basis for those opinions"); *Smith v. Barrow Neurological Institute*, No. CV 10-01632-PHX-FJM, 2012 WL 4359057 (D. Ariz. Sep. 21, 2012) (concluding that bare

disclosure of medical records associated with treating physician was inadequate to satisfy disclosure requirements and constituted grounds to preclude treating physician as witness).

Because Plaintiff's failure to meet the disclosure requirements was neither substantially justified nor harmless under Rule 37(c)(1), Plaintiff has no expert testimony to support his case. *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-06 (9th Cir. 2001); *see also Harris v. United States*, 132 F. App'x 183, 184 (9th Cir. 2005) (concluding District Court did not err in precluding expert from testifying on behalf of plaintiff where plaintiff failed to timely disclose expert's designation and report). Without such testimony, Plaintiff cannot prove his APSA claim, and the Court must grant summary judgment in favor of Defendant.

Alternatively, even if the Court were to conclude Ms. Beerman's Affidavit was a sufficient disclosure or that Plaintiff's failure to disclose was justified or harmless, Defendant moves to exclude Ms. Beerman's opinions as to causation under Federal Rule of Evidence 702 and the companion case law, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), because the opinions are insufficiently reliable. Specifically, Defendant points out that while Ms. Beerman, as a nurse, may have expertise in the nursing standard of care, nothing in her education or experience indicates the required expertise to opine whether certain treatment or lack of treatment causes medical injury; such is the province of a doctor in the specialty at issue. For example, Defendant argues, and the Court agrees, that Ms. Beerman is not qualified to opine whether the administration of a few doses of Seroquel over a few days caused or could have caused medical injury to Ms. Williamson. For this additional reason, Plaintiff cannot prove his APSA claim, and Defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED** denying Plaintiff's Motion for Continuance (Doc. 37).

**IT IS FURTHER ORDERED** denying Plaintiff's Motion to Request Discovery (Doc. 38).

- 10 -

1       **IT IS FURTHER ORDERED** granting Defendant Dignity-Kindred Rehabilitation

2 Hospital East Valley LLC's Motion for Summary Judgment (Doc. 39).

3       **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in

4 favor of Defendant and close this case.

5       Dated this 27th day of February, 2023.

6

7                   Honorable John J. Tuchi
                  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28